T.C. Memo. 2015-122

UNITED STATES TAX COURT

ROBERT L. PORTER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2193-10.                    Filed July 1, 2015.

Robert L. Porter, pro se.

William R. Brown, Jr., for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, Judge:  In a notice of deficiency, respondent determined the

following deficiencies in petitioner's Federal income tax and additions to tax

under sections 6651(a)(2) and (f) and 6654 for taxable years 2004-07:[1]

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code (Code) as amended and in effect for the years at issue, and all Rule
(continued...)

[*2]

|  | | Additions to tax | | |
| Year | Deficiency | Sec. 6651(a)(2)[1] | Sec. 6651(f) | Sec. 6654 |
| --- | --- | --- | --- | --- |
| 2004 | $42,004 | $10,501 | $30,452.90 | $1,203.72 |
| 2005 | 135,902 | 27,859.91 | 98,528.95 | 5,451.25 |
| 2006 | 102,780 | 14,903.10 | 74,515.50 | 4,863.94 |
| 2007 | 47,561 | 4,042.69 | 34,481.73 | 2,164.62 |

[1]Additions to tax under sec. 6651(a)(2) continue to accrue at a rate of 0.5% per month for each month of nonpayment, not exceeding 25%. These figures were current as of the date of the notice of deficiency.

Petitioner timely petitioned this Court for redetermination of the deficiencies and additions to tax. After the petition was filed respondent conducted bank deposits analyses of petitioner's personal and business checking accounts and filed an amended answer asserting additional deficiencies in his Federal income tax for taxable years 2005-07 of $169,834, $199,801, and $212,812, respectively, and corresponding computational adjustments to the additions to tax.

---

[1](...continued)
references are to the Tax Court Rules of Practice and Procedure.

**[*3]**   After concessions by the parties,[2] the issues for decision are:  (1) whether petitioner had Schedule C gross receipts for taxable years 2004-07 (years at issue) of $800,152, $1,185,194, $1,025,626, and $828,745.91, respectively; (2) whether petitioner is entitled to Schedule C deductions in amounts greater than those respondent allowed; (3) whether petitioner is liable for self-employment tax under section 1401; (4) whether petitioner is liable for additions to tax under section 6651(f);[3] and (5) whether petitioner is liable for additions to tax under sections 6651(a)(2) and 6654.

---

[2]Petitioner conceded that he received most of the unreported income at issue properly reportable on Schedule C, Profit or Loss From Business, discussed further infra.  After trial respondent conceded that petitioner is entitled to two dependency exemption deductions for each of the years at issue and a home mortgage interest deduction for each of the years 2005-07.  Respondent also conceded petitioner's entitlement to deductions for the following Schedule C items for each of the years 2005-07:  materials expenses, overhead expenses, advertising expenses, insurance expenses, equipment and repairs expenses, equipment rental expenses, contract labor expenses (paid by check), contractors expenses, home office expenses, telephone/fax expenses, Internet expenses, electric expenses, and charitable contribution payments (paid from petitioner's business checking account).

[3]In the alternative, respondent asserts that petitioner is liable for additions to tax under sec. 6651(a)(1).

**[*4]**                    FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  Other facts were deemed stipulated under Rule 91(f).  The stipulated facts and deemed stipulated facts are incorporated herein by this reference.  Petitioner resided in Florida when he petitioned this Court.

I.    Petitioner's Schedule C Business and Investment Activities

Petitioner began working as a mason and a concrete laborer in 1978, and he has been self-employed since 1980.  Petitioner is the sole owner and operator of Porter's Masonry & Concrete, a sole proprietorship that he founded in 2002 or 2003.  Porter's Masonry & Concrete specializes in laying block and pouring concrete for sidewalks and foundations of houses in central Florida.  General contractors hire Porter's Masonry & Concrete as a subcontractor to perform different types of masonry and concrete work.  During the years at issue several general contractors filed Forms 1099-MISC, Miscellaneous Income, with the Internal Revenue Service (IRS), reporting payments made to petitioner or to Porter's Masonry & Concrete.  Petitioner also worked for clients directly and received payments for that work.  Petitioner maintained a home office in connection with Porter's Masonry & Concrete at all relevant times.

**[\*5]**   Petitioner maintained a personal and a business checking account at PNC

Bank.[4]  Petitioner deposited into the accounts checks from clients in payment for

his work, including a $30,304.35 check from "Phillip L. or Falecha Englett"

deposited into his business checking account in 2006.  Petitioner paid some

business expenses with funds from his personal checking account and also

charged business expenses to his personal credit card.  Petitioner also paid some

personal expenses, such as medical expenses, with funds from the business

checking account.

Throughout the years at issue petitioner hired contract laborers to help him

on work sites.  Petitioner paid the contract laborers either in cash or with checks

made out to them and drawn on the business checking account.  When paying the

laborers in cash, petitioner obtained the cash by writing a check made out to

"Cash" and withdrawing the amount from his business checking account.  At times

petitioner had to take out loans or cash advances to pay the contract laborers'

compensation and other business expenses because his obligations were due

before he was paid for his work.  Petitioner generally repaid the loans as soon as

possible to avoid having to pay interest.

---

[4]The PNC Bank where petitioner maintained his accounts conducted
business under the name Harbor Federal Savings Bank until 2006 and then as
National City Bank until 2008.

[*6] For 2004-06 petitioner issued Forms 1099-MISC to some of the contract laborers he had hired in those years and filed those forms with the IRS. For 2004-06 he filed 140, 50, and 38 Forms 1099-MISC, respectively. He did not file any Forms 1099-MISC for 2007 even though he had hired and paid contract laborers during that year. Petitioner did not maintain financial books or records for Porter's Masonry & Concrete for the years at issue.

Besides his Schedule C business, petitioner participated in exchange-based investment activities, such as trading futures contracts, for personal gain. Petitioner's trading activities were secondary to his business as a mason and a concrete laborer in terms of the dollar amounts involved, the time devoted to the activities, and the extent to which the activities provided him with a livelihood. Moreover, he did not deal in securities or commodities held primarily for sale to customers in the ordinary course of his trade or business.

## II. Petitioner's Involvement With Tax-Avoidance Organizations

Petitioner became involved with certain organizations and individuals, such as the Patriot Network, We the People, and Richard Cornforth, that advocate tax avoidance and encourage actions to frustrate and delay the IRS' collection efforts. See, e.g., Williamson v. Commissioner, T.C. Memo. 2009-188, slip op. at 3 (categorizing the Patriot Network as an organization that advocates tax

[*7] avoidance); Byers v. Commissioner, T.C. Memo. 2007-331, slip op. at 6 n.2 (describing We the People as a tax-protester organization), aff'd, 351 Fed. Appx. 161 (8th Cir. 2009).  He paid an annual fee to the Patriot Network for access to its Web site and for assistance with tax problems.[5]  Petitioner testified that he became convinced that Federal income taxes were "illegitimate" and that caselaw showed that individuals who had refused to pay taxes were prevailing in court.

During the years at issue petitioner worked as a subcontractor for Independence Homes, a company that built residential houses.  While working for Independence Homes, he told the CEO of the company that Federal income taxes were unconstitutional and illegal and that he did not pay them.

On January 23, 2008, petitioner filed a notarized document entitled "Official Declaration of Domicile" with the Clerk of the Circuit Court, Volusia County, Florida.  The document stated that petitioner did not believe himself to be a U.S. citizen but was rather "One of the People", a "Florida [S]tate Citizen", a

---

[5]Petitioner testified that he paid the annual fee for 2013 but planned on canceling his membership for 2014.

[*8] "Sovereign", and a "Man upon the land".[6] Petitioner filed this document at the suggestion of one of the tax-avoidance organizations.

III.    Petitioner's Tax Liabilities and the Notice of Deficiency

Although petitioner timely filed Federal income tax returns for taxable years 1988-89, he did not file any Federal income tax returns for taxable years 1999, 2000-03, and 2005-10.[7] For taxable year 2004 petitioner filed a Form 1040, U.S. Individual Income Tax Return, in which he stated that he had zero gross income and owed zero tax.

Revenue Agent Susan Pritchard conducted an examination for petitioner's 2004-07 taxable years. Petitioner did not cooperate with Revenue Agent Pritchard. On April 20, 2009, petitioner sent Revenue Agent Pritchard a letter with wording borrowed from We the People expressing his unwillingness to work with her during the examination. He attached to the letter a Form 12153, Request for a Collection Due Process or Equivalent Hearing.

---

[6]The "Official Declaration of Domicile" also stated that petitioner was not a "person", an "individual", a "'statutory' person", a "legal resident of Florida", a "permanent resident", a "Florida resident", a "citizen of Volusia county", an "alien", a "U.S. person", a "U.S. individual", a "U.S. subject", or an "enemy combatant".

[7]Only taxable years 2004-07 are before the Court. The record does not show whether petitioner filed Federal income tax returns for taxable years 1990-98.

[*9]   Revenue Agent Pritchard sent petitioner a letter dated April 24, 2009, stating that he had submitted Form 12153 prematurely, as no tax had been assessed yet.  On May 6, 2009, Revenue Agent Pritchard sent petitioner a letter informing him that his arguments were frivolous and providing Code citations and IRS guidance pertaining to his filing requirements and respondent's authority to impose and collect income tax.  The letter specifically addressed promoters of tax-avoidance activities, stating:  "These people base their arguments on legal statements taken out of context and on frivolous arguments that have been repeatedly rejected by [F]ederal courts."

Nevertheless, at the suggestion of the aforementioned tax-avoidance organizations, petitioner continued to send letters to Revenue Agent Pritchard espousing similar arguments and often accompanied by Forms 12153.  For example, with assistance from the Patriot Network, petitioner sent Revenue Agent Pritchard a letter dated May 13, 2009, threatening legal action against her and the United States.[8]  Petitioner also sent Revenue Agent Pritchard a letter dated July 14,

_____

[8]The letter demands that Revenue Agent Pritchard comply with petitioner's various requests, such as providing him with his own correspondence to the IRS to prove that he had used frivolous arguments, providing citations of "each and every [F]ederal statute that imposes a legal duty on me relating to the revenue laws of the United States", and "relat[ing] each and every section of the Internal Revenue Code to a revenue taxable activity that you claim I am involved in."  The letter

(continued...)

[*10] 2009, "demanding that * * * [she] send * * * [him] a certified assessment of how * * * [she has] now came [sic] up with this alleged amount & the name of the person or persons preparing it", and a letter dated October 23, 2009, and addressed to "Tax Collector" that requests a section 6320/6330 hearing and is accompanied by an attachment of materials that petitioner received from the Patriot Network.[9]

Petitioner did not provide Revenue Agent Pritchard with any books or records because he did not maintain any books or records and because he had discarded all of his receipts at the suggestion of one of the tax-avoidance organizations. Therefore, Revenue Agent Pritchard had no choice but to rely on

---

[8](...continued)
references civil and criminal prosecution of Revenue Agent Pritchard and states: "If you fail or refuse to comply with this request, it will compound your felony extortion found at 26 USC 7214(a)" and "YOUR FAILURE OR REFUSAL TO COMPLY WITH THIS REQUEST COMPOUNDS YOUR HARASSMENT BY THREATENING ME WITH MALICIOUS PROSECUTION IN VIOLATION 26 USC 7214(a)." The letter also contains pages of inapposite citations of the United States Code and caselaw.

[9]In 2006 for taxable year 2004 the Commissioner proposed assessment of a sec. 6721 penalty against petitioner for incorrectly filing 124 Forms 1099-MISC. In response petitioner sent the District Director a letter written in a style similar to that used in the letters that he sent to Revenue Agent Pritchard, wherein he identified himself as a "NONTAXPAYER" and asserted that Federal income taxes were unconstitutional. The proposed penalty under sec. 6721 is not before the Court, and the record does not indicate whether the penalty was ever assessed or collected.

[*11] petitioner's IRPTR and PMFOL transcripts for the years at issue.[10]  These transcripts show the Forms 1099-MISC that third-party payors filed with respect to petitioner and the Forms 1099-MISC that petitioner filed with respect to third-party payees, respectively.

The IRPTR transcripts show that petitioner received payments in the years at issue of $800,152, $728,768, $488,662, and $255,749, respectively.  The IRPTR transcripts also show that petitioner realized losses in the years at issue from his exchange-based investment activities of $18,806, $18,274, $41,897, and $53,872, respectively.  The PMFOL transcripts show that petitioner filed Forms 1099-MISC for 2004-06 with respect to the contract laborers in which he reported paying the laborers amounts totaling $67,635, $341,310, and $195,107, respectively.

Respondent subsequently prepared a substitute for return for each of petitioner's years at issue.  See sec. 6020(b).  The substitutes for returns show that respondent calculated petitioner's Federal income tax liabilities by reducing the

---

[10]IRPTR is an acronym for Information Returns Processing Transcript Requests.  See Internal Revenue Manual (IRM) pt. 2.3.35.1 (Aug. 1, 2003). PMFOL is an acronym for Payer Master File On-line.  See id. pt. 4.75.12.6.2(1) (Dec. 20, 2004).

[*12] gross receipts reflected on the IRPTR transcripts by the contract labor expenses reflected on the PMFOL transcripts.

Because petitioner did not file any Forms 1099-MISC with respect to the contract laborers for 2007, respondent determined petitioner's contract labor expense for that year by calculating the ratio of his average gross receipts from 2005 and 2006 to the average amounts reported on the Forms 1099-MISC that he had filed for 2005 and 2006 and applying that ratio to his 2007 gross receipts. Accordingly, respondent allowed a $110,945 contract labor expense deduction for 2007. Respondent determined that petitioner's exchange-based losses constituted capital losses and limited recognition of them to $1,500 for each year at issue because respondent determined that petitioner's filing status was married filing separately. Respondent also determined that petitioner was liable for self-employment tax for the years at issue of $14,341, $21,376, $19,543, and $15,968, respectively.

On October 20, 2009, respondent issued to petitioner a notice of deficiency with respect to his income tax liabilities for the years at issue. Even though petitioner was married for the years at issue, the liabilities reflected in the notice of deficiency are solely his because the income underlying the liabilities is attributable to him and he did not file jointly. Petitioner timely petitioned this

[*13] Court for redetermination of respondent's determinations. Petitioner attached to his petition a document that he obtained from the Patriot Network asserting, for example, that "the figures used by the IRS stem from illegal immigrants who have gained, through identity theft, my Social Security Number for their employment."

IV.   Respondent's Bank Deposits Analyses

On November 9, 2011, respondent issued a subpoena duces tecum[11] to PNC Bank seeking the production of petitioner's personal and business checking account bank records.[12]  Petitioner, with help from the Patriot Network, tried to prevent respondent from obtaining the records by filing a petition to quash summons in the U.S. District Court for the Middle District of Florida under section 7609.  The U.S. District Court dismissed the case for lack of jurisdiction because petitioner had not produced a copy of the subpoena and had not provided evidence that the Government had been properly served with a copy of the petition.  See Porter v. United States, No. 6:12-MC-34-Orl-36DAB, 2012 WL 2088697, at *1 & n.2 (M.D. Fla. Apr. 19, 2012) (report and recommendation of

---

[11]The subpoena duces tecum was issued pursuant to this Court's authority under sec. 7456(a)(1) in connection with a trial.  See Rule 147(b).

[12]The bank records, including bank statements, deposit slips, and canceled checks, are not a part of the record.

**[\*14]** the magistrate judge); see also id., 2012 WL 2088695, at \*1 (M.D. Fla. May 9, 2012) (adopting the report and recommendation of the magistrate judge).

After receiving the bank records from PNC Bank, Revenue Agent Michelle Alexander conducted bank deposits analyses of petitioner's personal and business checking accounts for 2005-07. She could not perform a bank deposits analysis for 2004 because the bank did not have records for years before 2005.

Revenue Agent Alexander determined the account balances at the beginning of each year, tallied the deposits and withdrawals during each year, and determined whether any of the deposits were nontaxable, including whether there were any returned items or transfers between accounts. She also compared the deposits to canceled checks to determine which deposits were reported on the Forms 1099-MISC that third-party payors had filed with respect to petitioner. The bank did not provide the underlying documentation[13] for all the deposits, and Revenue Agent Alexander listed in her report the deposits lacking underlying documentation under the heading "Copy of Deposited Check Not Provided By Bank" and included these amounts in the taxable deposits for the appropriate year.

---

[13]We use the term "underlying documentation" to refer to canceled checks or other identifying information that shows the source of a deposit.

[*15] Revenue Agent Alexander's analyses showed the following:

| Year | Taxable deposits into personal acct. | Taxable deposits into business acct. | Total |
|------|------|------|------|
| 2005 | ($3,335.81) | $1,188,530.30 | $1,185,194.49 |
| 2006 | 5,494.20 | 1,018,631.50 | [1]1,025,625.70 |
| 2007 | 12,903.26 | 815,842.65 | 828,745.91 |

[1]Revenue Agent Alexander's amended report increased petitioners' total taxable income for 2006 by $1,500 to account for cash that was not deposited.

Respondent amended his answer to assert increased deficiencies in petitioner's Federal income tax liabilities for taxable years 2005-07 on the basis of the bank deposits analyses. Respondent's amended answer asserted increases in deficiencies for taxable years 2005-07 of $169,834, $199,801, and $212,812, respectively,[14] as well as computational adjustments to the additions to tax.

V.   Petitioner's Trial Position

Petitioner relied on the Patriot Network Web site during the early stages of this case. For example, petitioner followed the Patriot Network's advice to file a request for admissions and a motion in limine to exclude from evidence the bank

---

[14]The deficiencies determined in the notice of deficiency and the asserted increases for taxable years 2005-07 totaled $305,736, 302,581, and $260,373, respectively.

[*16] records that respondent had obtained.[15]  However, petitioner testified that he subsequently realized he had made foolish mistakes "in trying to follow other people" and that he was trying to fix those mistakes.  He hired an accountant to file late returns for 2008-11, and he testified that he would no longer be paying the annual fee to the Patriot Network.

Petitioner, in an effort to cooperate with respondent, used the bank records that respondent had obtained and created spreadsheets showing what he believes to be his gross income and deductible expenses for 2005-07.  On the basis of the bank records, petitioner concedes that his Schedule C gross receipts for 2005 total $1,185,194, and he asserts that his Schedule C gross receipts for 2006 and 2007 are $1,018,620.98 and $658,584.13, respectively.  The spreadsheets also reflect petitioner's trial position with respect to deductions for those years.[16]  Because bank records are unavailable for 2004, petitioner estimates and concedes that his gross income and deductions for taxable year 2004 are the same as those for

---

[15]In response to petitioner's request for admissions, respondent filed a motion to vacate deemed admitted admissions.  Petitioner did not object to the granting of this motion, and the Court granted respondent's motion on October 21, 2010.  The Court denied petitioner's motion in limine on February 17, 2012.

[16]After trial respondent reviewed the spreadsheets and conceded numerous deductions discussed supra note 2.

[*17] taxable year 2005. However, respondent does not seek an increased deficiency with respect to taxable year 2004 on the basis of petitioner's concession.

OPINION

I.     Unreported Income

A.     Burden of Proof

The Commissioner's determinations in the notice of deficiency are generally presumed correct, and the taxpayer bears the burden of disproving them. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). For cases appealable to the U.S. Court of Appeals for the Eleventh Circuit, as this case appears to be absent a stipulation to the contrary, see sec. 7482(b)(1)(A), (2), the Commissioner's determination of unreported income is entitled to a presumption of correctness only if the determination is supported by a minimal evidentiary foundation linking the taxpayer to an income-producing activity, see Blohm v. Commissioner, 994 F.2d 1542, 1549 (11th Cir. 1993), aff'g T.C. Memo. 1991-636.

When the Commissioner raises "new matter" in his answer, however, he bears the burden of proof with respect to the new matter. See Rule 142(a); Dagres v. Commissioner, 136 T.C. 263, 277-278 (2011). New matter includes a new theory that "'alters the original deficiency or requires the presentation of different

**[*18]** evidence.'" <u>Dagres v. Commissioner</u>, 136 T.C. at 278 (quoting <u>Wayne Bolt & Nut Co. v. Commissioner</u>, 93 T.C. 500, 507 (1989)). Respondent therefore bears the burden of proof with respect to the additional gross receipts that he asserts in the amended answer that petitioner received.

Because petitioner concedes that he had gross receipts in amounts exceeding respondent's determinations in the notice of deficiency and respondent bears the burden of proof with respect to the remaining amounts at issue, we need not address the presumption of correctness or the burden-shifting regimes of sections 7491(a)(1)[17] and 6201(d)[18] with respect to the unreported income.

B.  Gross Income and Bank Deposits Analysis

Gross income includes all income from whatever source derived, including gross income derived from business. Sec. 61(a)(2). Taxpayers are required to

---

[17]The burden of proof shifts to the Secretary if a taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's liability for any tax imposed by subtit. A or B of the Code and the taxpayer satisfies the requirements of sec. 7491(a)(2). Sec. 7491(a)(1). The term "Secretary" means the Secretary of the Treasury or his delegate. Sec. 7701(a)(11)(B).

[18]If a taxpayer asserts a reasonable dispute with respect to an item of income reported on an information return filed by a third party and the taxpayer has fully cooperated with the Secretary, the Secretary bears the burden of producing reasonable and probative evidence, in addition to the information return, concerning the deficiency attributable to the income item. Sec. 6201(d).

[*19] maintain books and records sufficient to establish the amount of their gross income.  Sec. 6001.  If a taxpayer fails to do this, then the Commissioner may reconstruct the taxpayer's income using any reasonable method.  See Holland v. United States, 348 U.S. 121, 130-131 (1954); Giddio v. Commissioner, 54 T.C. 1530, 1532-1534 (1970).

The bank deposits method has long been upheld as a reasonable means of determining income where a taxpayer is unwilling or unable to provide adequate books and records.  See DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992); Fisher v. Commissioner, T.C. Memo. 1997-450, aff'd without published opinion, 165 F.3d 18 (4th Cir. 1998).  Bank deposits are considered prima facie evidence of a taxpayer's receipt of income.  Parks v. Commissioner, 94 T.C. 654, 658 (1990) (citing Tokarski v. Commissioner, 87 T.C. 74, 77 (1986)).

When the Commissioner has the burden of proof and relies upon a bank deposits analysis, he must either show a likely source for the deposits, see Armes v. Commissioner, 448 F.2d 972, 975 (5th Cir. 1971), aff'g in part, rev'g in part and remanding T.C. Memo. 1969-181, or disprove nontaxable sources alleged by the taxpayer, see United States v. Massei, 355 U.S. 595 (1958); Parks v. Commissioner, 94 T.C. at 661; Madigan v. Commissioner, T.C. Memo. 1997-383,

[*20] slip op. at 4-5.  The Commissioner can prove a likely source of income by demonstrating that a taxpayer's disclosed business is capable of producing significantly more income than the taxpayer reported.  Holland, 348 U.S. at 137-138; Gleckman v. United States, 80 F.2d 394, 399 (8th Cir. 1935); Boggs v. Commissioner, T.C. Memo. 1985-429, 50 T.C.M. (CCH) 797, 830 (1985).  If the Commissioner connects the bank deposits with a likely source of income, such as a lucrative business where the taxpayer is making regular and frequent bank deposits, the finder of fact may properly conclude that the deposits are income.  Holland, 348 U.S. at 137-138; Armes v. Commissioner, 448 F.2d at 974; Gleckman, 80 F.2d at 399.

1.    Taxable Years 2004-05

Petitioner's spreadsheets show that he agrees with respondent's determinations in the notice of deficiency regarding his gross receipts in 2004-05 and with respondent's assertion in the amended answer that he had additional gross receipts in 2005.  Respondent has met his burden of proof with respect to the proposed increase in gross receipts for 2005.  See Foster v. Commissioner, T.C. Memo. 2012-207, slip op. at 23.  On the basis of petitioner's concessions, we

[*21] conclude that he had gross receipts[19] of $800,152 and $1,185,194 in 2004[20] and 2005, respectively.

### 2. Taxable Year 2006

For taxable year 2006 respondent determined on the basis of the third-party information returns that petitioner had unreported income of $488,662. The bank deposits analysis showed that petitioner made taxable deposits into his business checking account of $1,018,631.50, made taxable deposits into his personal checking account of $5,494.20, and received $1,500 of cash that was not deposited, for a total of $1,025,626.

Petitioner concedes that he had $1,018,620.98 of gross receipts in 2006. It appears from the spreadsheets that petitioner primarily disputes respondent's assertion that he deposited taxable income into his personal checking account and

---

[19]Respondent does not contend that petitioner received any other taxable income for the years at issue, and petitioner does not claim that his gross receipts should be reduced by any cost of goods sold. See Metra Chem Corp. v. Commissioner, 88 T.C. 654, 661 (1987); sec. 1.61-3(a), Income Tax Regs. Therefore, petitioner's gross receipts equal his gross income for the years at issue.

[20]Petitioner conceded that his gross receipts for 2004 equaled his gross receipts for 2005. However, respondent does not seek an increased deficiency for 2004 on the basis of this concession. Consequently, we address only respondent's position as reflected in the notice of deficiency.

[*22] received $1,500 of cash that was not deposited.[21]  Petitioner further contends that some of the deposits into his checking accounts are nontaxable because they are gifts or loans, but he has not specified particular deposits that he believes are nontaxable, nor has he identified the year(s) in which the alleged gifts or loans were made.

Respondent has met his burden of proof with respect to the $10.52 discrepancy between the parties' calculations of taxable deposits into petitioner's business checking account in 2006.  Respondent has identified a likely source of the income by proving that petitioner ran a lucrative business capable of producing much more income than he reported.  Petitioner frequently deposited checks in substantial amounts from construction and home-building companies and from individuals into his business checking account.  We conclude that petitioner deposited $1,018,631.50 into his business checking account in 2006 and that this amount is taxable income to him.

---

[21]Petitioner did not fully explain to the Court his position regarding gross income for the years at issue, and the spreadsheets are not entirely clear in this respect.  We therefore interpret the spreadsheets liberally in ascertaining petitioner's position.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (stating that a document filed by a pro se litigant is "'to be liberally construed'" (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976))); Gray v. Commissioner, 138 T.C. 295, 298 (2012) (discussing how a pro se litigant's claims should be broadly construed), supplemented by 140 T.C. 163 (2013).

[*23] Respondent also asserts that petitioner deposited $5,494.20 of taxable income into his personal checking account in 2006. This figure is the sum of the amounts of all the checks deposited into the personal checking account, $55,734.15, less $48,200 of transfers between checking accounts, a returned check of $39.95, and $2,000 that petitioner withdrew as cash instead of depositing.

The deposits at issue are from three checks from three individuals (Melissa A. Sweeney, Christopher A. or Sarah B. O'Neill, and Phillip L. or Falecha Englett) and two checks without underlying documentation. Respondent has shown that petitioner's business was capable of producing substantial income that he would frequently deposit into a checking account. Checks often bore the names of general contracting companies, but individuals paid petitioner by check as well. Further, it is reasonable to infer that petitioner deposited some Schedule C gross receipts into his personal checking account because he paid, at least occasionally, business expenses with funds from his personal checking account. Moreover, petitioner deposited a $30,304.35 check from "Phillip L. or Falecha Englett" into his business checking account in 2006, the amount of which supports an inference that there was a business relationship between petitioner and the check's payors.

Because respondent has shown a likely source of the deposits, he need not negate nontaxable sources alleged by petitioner. See Holland, 348 U.S. at 138;

[*24] <u>Medlin v. Commissioner</u>, T.C. Memo. 2003-224, slip op. at 126-127, <u>aff'd</u>, 138 Fed. Appx. 298 (11th Cir. 2005).  We conclude that petitioner deposited $5,494.20 of taxable income into his personal checking account in 2006.

Respondent also contends that petitioner's gross income includes $1,500 of cash that petitioner did not deposit into either checking account.  This amount is the cash that petitioner received when he cashed a $3,000 check but deposited only $1,000 of that amount, less a subsequent cash deposit of $500 into his business checking account.  Respondent has identified a likely source of this cash, and we conclude that the $1,500 cash constitutes taxable income to petitioner.  We therefore find that petitioner had Schedule C gross receipts for taxable year 2006 of $1,025,626.

### 3. Taxable Year 2007

For taxable year 2007 respondent determined in the notice of deficiency that petitioner had unreported gross receipts of $255,749.  Respondent's bank deposits analysis showed that in 2007 petitioner deposited $815,842.65 into his business checking account and deposited $12,903.26 into his personal checking account, for a total of $828,745.91.

Petitioner concedes that he had $658,584.13 in Schedule C gross receipts in 2007.  Petitioner disputes respondent's assertion that he deposited into his

**[\*25]** personal checking account $12,903.26 of taxable income and seems to contend that so-called missing deposits into his business checking account are not taxable income.[22]  The missing deposits are those deposits lacking underlying documentation.

The parties' dispute about $157,258.52 of deposits into petitioner's business checking account stems primarily from petitioner's contention that the so-called missing deposits are nontaxable.  Although the bank did not provide underlying documentation for these deposits, respondent does not necessarily need underlying documentation such as canceled checks to carry his burden of proof.  Petitioner had a lucrative masonry and concrete business in 2007 and made frequent, substantial deposits into his business checking account of gross receipts from that business.  Respondent has therefore shown a likely source of the deposits, and he need not negate petitioner's vague contention that unspecified deposits were gifts or loans.  See Holland, 348 U.S. at 138; Medlin v. Commissioner, slip op. at 126-127.

Respondent also asserts that petitioner made $12,903.26 in taxable deposits into his personal checking account.  This amount is the amount of total deposits

---

[22]Again, this is a liberal interpretation of petitioner's spreadsheets because his position is not entirely clear.

**[*26]** into the personal checking account, $54,920.26, less $42,017 of transfers between the personal and business checking accounts. The items in dispute are a cash deposit of $1,020 and deposited checks without underlying documentation totaling $11,883.26. Porter's Masonry & Concrete was in business in 2007, and petitioner at least occasionally paid business expenses with funds from his personal checking account. Respondent has shown a likely source for these deposits and has met his burden of proof. Accordingly, we find that petitioner had $828,745.91 of Schedule C gross receipts for taxable year 2007.

II.     Petitioner's Claimed Deductions

        A.      Deductions Generally

Generally, the taxpayer bears the burden of proving that he is entitled to any claimed deduction. See Rule 142(a)(1); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). This includes the burden of substantiation. See sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), (e), Income Tax Regs. Although petitioner contends that the burden of proof should shift to respondent under section 7491(a)(1), the burden remains with petitioner because he did not satisfy the requirements of paragraph (2), including the requirement to maintain all records required under the Code. See supra note 17.

[*27] Section 162(a) allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. See Commissioner v. Lincoln Sav. & Loan Ass'n, 403 U.S. 345, 352 (1971). A trade or business expense is ordinary if it is normal or customary within a particular trade, business, or industry, and it is necessary if it is appropriate and helpful for the development of the business. Commissioner v. Heininger, 320 U.S. 467, 471 (1943). Section 212(1) allows a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income. See Carbine v. Commissioner, 83 T.C. 356 (1984), aff'd, 777 F.2d 662 (11th Cir. 1985); DiLeonardo v. Commissioner, T.C. Memo. 2000-120, slip op. at 14-15 (explaining that the "ordinary and necessary" standard is the same under sections 162(a) and 212). "'[E]xcept for the requirement of being incurred in connection with a trade or business,' * * * a deduction under section 212 'is subject * * * to all the restrictions and limitations that apply in the case of the deduction under * * * [section 162(a)] of an expense paid or incurred in carrying on any trade or business.'" Estate of Davis v. Commissioner, 79 T.C. 503, 507 (1982) (quoting H.R. Rept. No. 2333, 77th Cong., 2d Sess. (1942), 1942-2 C.B. 372, 430 and S. Rept. No. 1631, 77th Cong., 2d Sess. (1942), 1942-2 C.B. 504, 571, the legislative history for the predecessor of section 212). Section 262(a)

[*28] disallows deductions for personal, living, and family expenses. See sec. 1.162-17(a), Income Tax Regs.

Generally, a taxpayer must maintain adequate records to prove entitlement to any deductions or credits. Sec. 6001; INDOPCO, Inc. v. Commissioner, 503 U.S. at 84; sec. 1.6001-1(a), Income Tax Regs. When a taxpayer establishes that he paid or incurred a deductible expense but does not establish the amount of the expense, we may estimate the amount allowable in some circumstances (Cohan rule). See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). There must be sufficient evidence in the record, however, to permit us to conclude that the taxpayer paid or incurred a deductible expense in at least the amount allowed. See Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957). In estimating the amount allowable, we bear heavily upon the taxpayer who failed to maintain required records and to substantiate deductions as the Code requires. See Cohan v. Commissioner, 39 F.2d at 544.

For certain kinds of business expenses, section 274(d) overrides the Cohan rule. See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969). Under section 274(d), a taxpayer must satisfy strict substantiation requirements before a deduction is allowable. These strict substantiation requirements of section 274(d) apply to any traveling expense,

**[*29]** including meals and lodging away from home; any item with respect to an activity in the nature of entertainment; or the use of listed property, as defined in section 280F(d)(4), including computers and property used as a means of transportation.

To deduct these expenses, the taxpayer must "substantiate[] by adequate records or by sufficient evidence corroborating the taxpayer's own statement": (1) the amount of the expense or other item; (2) the time and place of travel, entertainment, or use of the property; (3) the business purpose of the expense or other item; and (4) the business relationship of the taxpayer to the persons entertained.  Sec. 274(d).  To satisfy the requirements of section 274(d) by adequate records, a taxpayer must maintain records and documentary evidence that in combination are sufficient to establish each element of an expenditure or use. Sec. 1.274-5T(c)(1) and (2), Temporary Income Tax Regs., 50 Fed. Reg. 46016-46017 (Nov. 6, 1985).  When a taxpayer substantiates claimed expenses by sufficient evidence corroborating his own statement, a contemporaneous log is not required, but corroborative evidence created at or near the time of the expenditure to support a taxpayer's reconstruction "of the elements * * * of the expenditure or use must have a high degree of probative value to elevate such statement" to the

[*30] level of credibility of a contemporaneous record. Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., supra.

### B. Petitioner's Claimed Schedule C Deductions

#### 1. Contract Labor Expenses

For taxable years 2005-07 petitioner's spreadsheets showed contract labor expenses in the aggregate amounts of $745,262.25, $343,252.50, and $214,594, respectively. Respondent had determined in the notice of deficiency that petitioner was entitled to Schedule C contract labor expense deductions of $347,310, $195,107 and $110,945 for taxable years 2005-07, respectively.[23] After trial respondent fully allowed the claimed deductions for contract labor expenses that petitioner paid with checks written out to specific individuals that were drawn on the business checking account. Respondent also conceded 33% of the claimed deductions for contract labor expenses that petitioner contends were paid in cash.

Petitioner contends that all checks drawn on his business checking account that were written out to "Cash" were for paying the contract laborers. He testified that when he withdrew cash from his business account for any other reason, he either filled out a withdrawal slip or wrote a check to himself. Respondent's bank

---

[23]In the notice of deficiency respondent also determined that petitioner was entitled to a contract labor expense deduction for taxable year 2004 of $671,635. Petitioner does not dispute this amount.

[*31] deposits analyses show that petitioner wrote checks both to "Cash" and to himself. Most of the checks from petitioner's business checking account written to himself were later deposited into his personal checking account.

We find credible petitioner's testimony that he paid contract laborers by writing checks to "Cash" and that he withdrew personal funds by withdrawal slips or checks written to himself, which is corroborated by his depositing the business checks written to himself into his personal checking account. Petitioner's willingness to work with respondent to calculate his correct tax liabilities, however late in the game, lends credibility to his testimony and his spreadsheets. However, petitioner's complete lack of recordkeeping does not permit us to conclude with any confidence that all of the proceeds from business checks written to "Cash" were used for contract labor expenses. Bearing heavily against petitioner, who chose to forgo recordkeeping, we find that he is entitled to deduct 80% of the contract labor expenses he claims were paid in cash for the years at issue.

### 2. "Loan Expenses"

On the spreadsheets that he prepared petitioner claimed "loan expense" deductions for taxable years 2005-07. Petitioner contends that he paid these "loan expenses" from his business checking account in 2005-07 of $11,163.65,

[*32] $19,006.85, and $49,773.54, respectively. Petitioner also asserts that in 2007 he paid a "loan expense" of $3,571.33 from his personal checking account. Respondent disallowed the claimed deductions for these "loan expenses" in full for lack of substantiation.

A taxpayer may deduct interest paid or incurred during the taxable year if the interest is an ordinary and necessary expense of carrying on a trade or business. Sec. 162(a); Robinson v. Commissioner, 119 T.C. 44, 48 (2002); see sec. 163(a) (allowing a deduction for "all interest paid or accrued within the taxable year on indebtedness", with certain exceptions). The taxpayer bears the burden of substantiating the interest expense. See, e.g., Thompson v. Commissioner, T.C. Memo. 2011-291, slip op. at 9-10.

Petitioner occasionally took out loans or cash advances from a credit card to pay for contract labor, materials, and other business expenses. He generally paid off the loans or the cash advances as soon as he received payment for a project. Petitioner testified that he did not know whether the claimed loan expenses represented repayment of principal or payment of interest and fees. Petitioner is not entitled to deduct repayment of loan principal because loan proceeds are not taxable income when they are received. See United States v. Bishop, 412 U.S. 346, 349 (1973); United States v. Rochelle, 384 F.2d 748, 751 (5th Cir. 1967);

[*33] Arlen v. Commissioner, 48 T.C. 640, 648-649 (1967).  He did not produce any documentation such as loan documents or credit card statements to prove that he took out business loans or that he paid interest and fees with respect to the loans.  Although petitioner took out loans or cash advances to pay business expenses, we cannot determine, and have no basis to estimate, what amounts, if any, of the claimed expenses represent deductible interest or fees.  We therefore sustain respondent's determinations with respect to the claimed "loan expenses".

### 3.    Truck Expenses

On the spreadsheets for 2005-07 petitioner claimed "Truck Expenses and Repairs" deductions of $43,424.79, $39,328.37, and $30,667.79, respectively.  Respondent allowed 33% of the claimed deductions.  In his answering brief petitioner claimed that at least some of these expenses are related to cement mixers and that he should be allowed a "standard vehicle expense for work related cars/trucks" and a "daily per diem in relation to [p]etitioner's personal vehicles."

Personal expenses, including the costs of owning and operating personal vehicles, are generally not deductible.  See sec. 262(a); Arnold v. Commissioner, T.C. Memo. 2010-223, slip op. at 13-14; sec. 1.262-1(b)(5), Income Tax Regs.  Moreover, passenger automobiles and other property used as a means of transportation are listed property and are subject to the strict substantiation

[*34] requirements of section 274(d). See sec. 280F(d)(4)(A)(i) and (ii). We may not estimate petitioner's vehicle costs, including mileage. See Boyd v. Commissioner, 122 T.C. 305, 320 (2004) (stating that section 274(d) overrides the Cohan rule); Rosemann v. Commissioner, T.C. Memo. 2009-185, slip op. at 16-17 (stating that vehicle mileage deductions are subject to section 274(d) substantiation rules); sec. 1.274-5(j)(2), Income Tax Regs. Petitioner must substantiate his truck expenses by either adequate records or sufficient evidence corroborating his own statement. See sec. 274(d)(4); sec. 1.274-5T(c), Temporary Income Tax Regs., supra. Petitioner's testimony and noncontemporaneous spreadsheets, standing alone, are not sufficient to substantiate the claimed vehicle expenses. See, e.g., Rasmussen v. Commissioner, T.C. Memo. 2012-353, at *13-*16, aff'd per curiam, 562 Fed. Appx. 544 (8th Cir. 2014). Although cement mixers are not listed property, see sec. 1.274-5T(k)(2)(ii)(E), Temporary Income Tax Regs., 50 Fed. Reg. 46033 (Nov. 6, 1985),[24] petitioner has not shown what portion of his claimed vehicle expenses is attributable to the cement mixers or why the cement mixers were not included in his claimed "Equipment and Repairs" expense deductions, which respondent fully allowed. Accordingly, petitioner is

---

[24]This regulation was finalized on May 19, 2010. See 75 Fed. Reg. 27936 (May 19, 2010).

[*35] not entitled to deduct vehicle expenses for taxable years 2005-07 in amounts greater than those respondent allowed.

### 4. Laptop Expense

Petitioner claimed a deduction of $3,119.39 for a laptop computer that he purchased in 2007 using funds from his personal checking account. Respondent disallowed this deduction because petitioner did not prove that the laptop was a business expense and because he did not properly substantiate its cost.[25]

Although petitioner had a computer in his home office, he also had two computers for personal use and did not offer any credible evidence showing that the laptop he purchased in 2007 was used for business. See secs. 162(a), 262(a). Computers are listed property unless they are used exclusively at a regular business establishment and are owned or leased by the person operating such establishment. Sec. 280F(d)(4)(A)(iv), (B); Whalley v. Commissioner, T.C. Memo. 1996-533, slip op. at 24. A home office is treated as a regular business establishment only if the home office is exclusively used on a regular basis as the taxpayer's principal place of business or as a place of business in which the

---

[25]In general, a computer, including a laptop, is a capital item and is not deductible as a current expense. See sec. 168(e)(3)(B)(iv), (i)(2)(B). However, in disallowing the laptop expense as a current deduction, respondent does not take a position with respect to sec. 179. See sec. 179(a), (c) (requiring an affirmative election to expense sec. 179 property).

[*36] taxpayer meets patients, clients, or customers within the course of the taxpayer's business. Secs. 280F(d)(4)(B), 280A(c)(1)(A) and (B).

Petitioner has not shown that he used the laptop exclusively in his home office or that he otherwise satisfies the requirements of section 280F(d)(4)(B). We therefore treat the laptop as listed property. Petitioner's spreadsheet claiming the cost of the laptop does not serve as an adequate record or sufficient evidence of its cost and use as required by section 274(d). Accordingly, petitioner is not entitled to deduct the cost of the laptop.

### 5. Medical Expenses

On the spreadsheets petitioner claimed Schedule C medical expense deductions for 2005-07 of $6,292.21, $3,762, and $1,104.95, respectively. Petitioner paid some of these expenses from his business checking account even though the expenses were personal, and Porter's Masonry & Concrete did not provide medical insurance for any of its workers. Respondent disallowed business expense deductions for medical expenses petitioner claimed but allowed deductions for the medical expenses as properly substantiated on petitioner's Schedules A, Itemized Deductions.

Section 162(a) allows a taxpayer to deduct the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or

[*37] business.  See Commissioner v. Lincoln Sav. & Loan Ass'n, 403 U.S. at 352.  Petitioner's medical expenses were not ordinary and necessary business expenses but rather were personal expenses.  Personal, living, and family expenses are not deductible except as otherwise expressly permitted.  Sec. 262.  Section 213(a) generally allows a deduction for expenses paid during a taxable year, not compensated for by insurance or otherwise, for medical care of a taxpayer, a taxpayer's spouse, and a taxpayer's dependents, to the extent that such expenses exceed 7.5% of adjusted gross income.  We find that petitioner is entitled to deduct the medical expenses only on Schedules A subject to the adjusted gross income limitation.  See Hathaway v. Commissioner, T.C. Memo. 1996-389, slip op. at 14-15 (differentiating between trade or business expenses that are "above the line" Schedule C deductions and deductible personal expenses that are "below the line" Schedule A deductions).

### 6.    Charitable Contributions

Petitioner claimed charitable contributions as business expense deductions for taxable years 2005-07.  Respondent conceded that petitioner is entitled to deduct as business expenses contributions to charities that he made from his business checking account.  However, respondent disallowed as business expense deductions petitioner's charitable contributions for years 2005-07 that he made

**[\*38]** from his personal checking account of $7,250, $7,700, and $6,500, respectively. Petitioner, however, stipulated that he made these charitable contributions in his personal capacity, and respondent allowed these charitable contribution deductions on petitioner's Schedules A.

Section 170(a) provides: "There shall be allowed as a deduction any charitable contribution * * * payment of which is made within the taxable year", subject to the income limitations in subsection (b). If a contribution is deductible under section 170, the contribution is not a deductible business expense under section 162(a). Sec. 1.162-15(a), Income Tax Regs.; see Hartless Linen Serv. Co. v. Commissioner, 32 T.C. 1026, 1030-1031 (1959); Pace v. Commissioner, T.C. Memo. 2010-272, slip op. at 17-18. The amounts at issue are charitable contributions that petitioner made in his personal capacity. They are therefore not deductible on the Schedules C, but they are deductible on the Schedules A, subject to the income limitation under section 170(b)(1).

C. Petitioner's Claimed Investment-Based Deductions

1. Capital Losses

Petitioner realized losses in the years at issue from exchange-based investment activities, including futures trading, of $18,806, $18,274, $41,897, and

[*39] $53,872, respectively. Respondent allowed a $1,500 capital loss deduction per year.

Petitioner's exchange-based activities were not sufficiently substantial to rise to the level of a trade or business. Therefore, petitioner is considered an investor, as opposed to a dealer or trader, and he held the futures contracts and any other securities or commodities that gave rise to the losses as capital assets. See King v. Commissioner, 89 T.C. 445, 457-459 (1987); Arberg v. Commissioner, T.C. Memo. 2007-244, slip op. at 27-29; see also Fed. Nat'l Mortg. Ass'n v. Commissioner, 100 T.C. 541, 572 (1993). Sections 1211 and 1212 limit a taxpayer's recognition of losses from sales or exchanges of capital assets. See Gould v. Commissioner, 139 T.C. 418, 444 (2012), aff'd per curiam, 552 Fed. Appx. 250 (4th Cir. 2014). A noncorporate taxpayer must first offset capital losses against capital gains for the taxable year. Sec. 1211(b). If capital losses exceed capital gains for the year, a taxpayer whose filing status is married filing separately may deduct up to $1,500 of the excess against ordinary income. Id. Capital losses that exceed the $1,500 limitation may be carried forward. Sec. 1212(b).

Respondent properly determined that petitioner's filing status for the years at issue is married filing separately because petitioner was married in those years

**[*40]** and did not file jointly. See sec. 1(d). Petitioner was therefore entitled to deduct only $1,500 of realized capital losses that exceeded capital gains for the taxable year. See sec. 1211(b). Accordingly, we sustain respondent's determinations with respect to the capital loss deductions.

### 2. Trading Account Expenses

For taxable years 2005-07 petitioner claimed deductions associated with his trading accounts of $1,781.93, $13,143.80, and $21,721, respectively. He paid these amounts with funds from his personal checking account and testified that he incurred these expenses "from sending money to a trading account". Respondent disallowed these amounts in full because he determined that petitioner had not paid these expenses in connection with the production or collection of income and that he had not substantiated the expenses.

Petitioner was not a "dealer" in securities or commodities because he did not hold the property primarily for sale to customers in the ordinary course of his trade or business, and he was not a "trader" because his trading activities were secondary to his business as a mason and a concrete laborer. See King v. Commissioner, 89 T.C. at 458-459; Kay v. Commissioner, T.C. Memo. 2011-159. However, petitioner was an investor for the years at issue. See Kay v. Commissioner, T.C. Memo. 2011-159. Investors may itemize and deduct ordinary

**[\*41]** and necessary expenses that relate to their investing, provided the expenses are properly substantiated.  See secs. 212(1), 6001; Kay v. Commissioner, slip op. at 7.

Although petitioner did not maintain all records required under the Code relating to the claimed deductions, see sec. 6001, he was engaged in an income-producing activity for which he paid some costs, such as the cost of wiring funds to his trading account and brokerage fees.  Petitioner has therefore established his entitlement to a deduction under section 212(1), and we may estimate the amount allowable if he has provided some rational basis on which an estimate may be made.  See Cohan v. Commissioner, 39 F.3d at 543-544; Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).  Petitioner relied on bank records from 2005-07 to calculate the amounts that he paid to conduct his trading activities.  The fact that petitioner claimed larger trading account expense deductions for the years in which his capital losses were larger, i.e., taxable years 2006 and 2007, supports a finding that he was more actively involved in trading activities, and thus paid greater costs, for those years.  Although the bank records are not in evidence, petitioner's spreadsheets summarizing the bank records provide a reasonable basis on which to base an estimate.  Bearing heavily against petitioner, who failed to maintain the required records, we find that he is entitled

**[\*42]** to deductions on Schedules A of his 2005-07 returns equal to 33% of the claimed investment expenses, subject to the 2% floor under section 67. See sec. 1.67-1T(a)(1)(ii), Temporary Income Tax Regs., 53 Fed. Reg. 9875 (Mar. 28, 1988).

D.    Additional Deduction Raised for the First Time on Brief

Petitioner contends for the first time on brief that he is entitled to a deduction for the payment of State and local taxes. See sec. 164(a). Because petitioner did not raise this issue in his petition, we deem it conceded. See Rule 34(b)(4); Swain v. Commissioner, 118 T.C. 358, 362 (2002). We also note that petitioner did not substantiate or even estimate the amounts of State and local taxes that he paid, if any. See sec. 6001; Hradesky v. Commissioner, 65 T.C. at 89-90. Petitioner therefore has failed to properly allege or prove that he is entitled to a deduction for the payment of State and local taxes.[26]

---

[26]In his answering brief petitioner also asserts that he is entitled to a home mortgage interest deduction. See sec. 163(h)(2)(D), (3). In his opening brief respondent conceded petitioner's entitlement to this deduction for taxable years 2005-07, and petitioner did not produce any records showing that he is entitled to a deduction for 2004. Petitioner is therefore not entitled to deductions for home mortgage interest in amounts greater than respondent allowed.

**[*43]** III.     Self-Employment Tax

Respondent determined that petitioner is liable for self-employment tax for the years at issue. Section 1401(a) and (b) imposes a tax on the self-employment income of every individual. Self-employment income is defined as "the net earnings from self-employment derived by an individual * * * during any taxable year". Sec. 1402(b). Net earnings from self-employment are defined as "the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business". Sec. 1402(a); see Renkemeyer, Campbell, & Weaver, LLP v. Commissioner, 136 T.C. 137, 146 (2011). Petitioner's net earnings for the years at issue were derived from his masonry and concrete business and are properly characterized as self-employment income. We therefore sustain respondent's determination that petitioner is liable for self-employment tax.[27]

IV.     Fraudulent Failure To File Returns

Petitioner did not file valid Federal income tax returns or pay income tax, including estimated tax, for the years at issue. Respondent determined that petitioner's failure to file was fraudulent and that he is liable for an addition to tax

---

[27]Respondent concedes that petitioner is entitled to a deduction equal to one-half of each year's self-employment tax under sec. 164(f).

[*44] under section 6651(f) for each year at issue. Section 6651(f) increases the addition to tax imposed by subsection (a)(1) for failure to timely file a return from a maximum of 25% of the amount of tax required to be shown on the return to a maximum of 75% if the failure to file was fraudulent. In ascertaining whether a taxpayer's failure to file was fraudulent under section 6651(f), we consider whether the taxpayer (1) failed to timely file a return for the taxable year where there was a tax liability required to be shown on a return (2) because of fraudulent intent. See sec. 6651(a), (b)(1), (f); Clayton v. Commissioner, 102 T.C. 632, 653 (1994); Mohamed v. Commissioner, T.C. Memo. 2013-255, at *19-*20, *24-*25 (citing Christianson v. Commissioner, T.C. Memo. 1999-99, rev'd on other grounds, 1 Fed. Appx. 704 (9th Cir. 2001)). The Commissioner must prove these elements by clear and convincing evidence. Sec. 7454(a); Rule 142(b); see Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989).

A.      Failure To Timely File a Return

Because section 6651(f) increases the addition to tax imposed by subsection (a)(1), respondent first must prove that petitioner failed to timely file a required Federal tax return. See sec. 6651(a)(1). The amount of the addition to tax under subsection (a)(1), and consequently under subsection (f), is calculated with regard to the amount of tax required to be shown on the return, which is offset by any

[*45] timely payments of tax or credits that a taxpayer is entitled to claim on the return. See sec. 6651(a)(1), (b)(1), (f); Mohamed v. Commissioner, at *19 ("[T]he base for a delinquency addition is the amount required to be shown on the delinquent return (reduced by section 6651(b)(1) for the amounts of any prepayments or credits)[.]").

Respondent introduced the Forms 1099-MISC that general contractors filed with respect to payments they made to petitioner and the bank deposits analyses. Respondent's evidence shows that petitioner was required to make a return for each of the years at issue because he received gross income in an amount that substantially exceeded the exemption amount. See secs. 6011(a), 6012(a)(1)(A), 151(d); Rev. Proc. 2006-53, sec. 3.18, 2006-2 C.B. 996, 1001 (stating the personal exemption amount for 2007); Rev Proc. 2005-70, sec. 3.17, 2005-2 C.B. 979, 983 (same for 2006); Rev. Proc. 2004-71 sec. 3.17, 2004-2 C.B. 970, 974 (same for 2005); Rev. Proc. 2003-85, sec. 3.16, 2003-2 C.B. 1184, 1188 (same for 2004). Respondent also introduced copies of certified transcripts for petitioner's taxable years at issue showing that petitioner did not file valid Federal income tax returns for those years. Substitutes for returns filed by the IRS under section 6020(b) do not qualify as returns for section 6651(a)(1) and (f) purposes. Sec. 6651(g)(1). A return that contains only zeros is similarly disregarded in determining a taxpayer's

[*46] liability under section 6651(a)(1) and (f). See Cabirac v. Commissioner, 120 T.C. 163, 168-169 (2003) (imposing a section 6651(a)(1) addition to tax where the taxpayer filed a zero return); Huminski v. Commissioner, T.C. Memo. 2012-302, at *5-*7 (imposing a section 6651(f) addition to tax where the taxpayer filed a zero return); Caton v. Commissioner, T.C. Memo. 2012-92, slip op. at 6-7 (same); see also United States v. Smith, 618 F.2d 280 (5th Cir. 1980) (holding that a zero return is not a valid return for section 7203 purposes). Further, petitioner concedes that he has tax liabilities for the years at issue. Respondent has clearly and convincingly proven that petitioner had an obligation to file timely income tax returns showing tax liabilities for the years at issue and failed to do so.[28]

B. Fraudulent Intent

In determining whether a taxpayer had the requisite fraudulent intent for imposition of the section 6651(f) addition to tax, we consider the same elements that we consider in imposing the fraud penalty under section 6663 and former section 6653(b)(1). Clayton v. Commissioner, 102 T.C. at 653; Mohamed v.

---

[28]Because sec. 6651(f) is keyed to subsec. (a)(1), a taxpayer cannot be liable for a subsec. (f) addition to tax if the failure to file is due to reasonable cause and not willful neglect. See sec. 6651(a)(1); Mohamed v. Commissioner, T.C. Memo. 2013-255, at *22-*23. Petitioner bears the burden of proof with regard to the "reasonable cause" exception of sec. 6651(a)(1), see Higbee v. Commissioner, 116 T.C. 438, 447 (2001), and he did not meet this burden.

[*47] Commissioner, at *22, *29-*30. If fraud is determined for multiple taxable years, the Commissioner's burden "applies separately for each of the years." Temple v. Commissioner, T.C. Memo. 2000-337, slip op. at 24-25, aff'd, 62 Fed. Appx. 605 (6th Cir. 2003). The Commissioner satisfies this burden by showing that "the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead or otherwise prevent the collection of taxes." DiLeo v. Commissioner, 96 T.C. at 874; see Mohamed v. Commissioner, at *21 ("The taxpayer must deliberately fail to file his return on the date due, knowing that, by doing so, he is concealing the fact that he has income subject to tax." (citing Bennett v. Commissioner, 30 T.C. 114, 120, 122 (1958))). Fraud means "'actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing.'" Zell v. Commissioner, 763 F.2d 1139, 1142-1143 (10th Cir. 1985) (quoting Mitchell v. Commissioner, 118 F.2d 308, 310 (5th Cir. 1941), rev'g 40 B.T.A. 424 (1939)), aff'g T.C. Memo. 1984-152. When a taxpayer fails to file a return, the taxpayer's intent to evade tax must manifest itself in some affirmative act of concealment or misrepresentation. Id. at 1146; see Jones v. Commissioner, 259 F.2d 300 (5th Cir. 1958), rev'g 25 T.C. 1100 (1956); see also Marsellus v. Commissioner, 544 F.2d 883, 886 (5th Cir. 1977), aff'g T.C. Memo. 1975-368. Fraud "does not include negligence, carelessness,

**[*48]** misunderstanding or unintentional understatement of income." United States v. Pechenik, 236 F.2d 844, 846 (3d Cir. 1956).

The existence of fraud is a question of fact to be resolved upon consideration of the entire record. See DiLeo v. Commissioner, 96 T.C. at 874. Fraud is never presumed and must be established by independent evidence of fraudulent intent. See Baumgardner v. Commissioner, 251 F.2d 311, 322 (9th Cir. 1957), aff'g T.C. Memo. 1956-112. However, fraud may be shown by circumstantial evidence because direct evidence of a taxpayer's fraudulent intent is seldom available. See Petzoldt v. Commissioner, 92 T.C. at 699; Gajewski v. Commissioner, 67 T.C. 181, 199-200 (1976), aff'd without published opinion, 578 F.2d 1383 (8th Cir. 1978). The taxpayer's entire course of conduct may establish the requisite fraudulent intent. See Stone v. Commissioner, 56 T.C. 213, 223-224 (1971). Any conduct likely to mislead or conceal may constitute an affirmative act of evasion, see Spies v. United States, 317 U.S. 492, 499 (1943), and an intent to mislead may be inferred from a pattern of such conduct, see Webb v. Commissioner, 394 F.2d 366, 378-379 (5th Cir. 1968), aff'g T.C. Memo. 1966-81. However, the Commissioner has not met his burden when we are left with only a suspicion of fraud, and even a strong suspicion is not sufficient to establish a taxpayer's liability for the fraud penalty. See Olinger v. Commissioner, 234 F.2d

[*49] 823, 824 (5th Cir. 1956), aff'g in part, rev'g in part on another ground T.C. Memo. 1955-9; Davis v. Commissioner, 184 F.2d 86, 87 (10th Cir. 1950), remanding a Memorandum Opinion of this Court; Green v. Commissioner, 66 T.C. 538, 550 (1976).

The circumstantial evidence by which the Commissioner may prove fraud includes various "badges of fraud" on which courts often rely. See Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), aff'g T.C. Memo. 1984-601; DiLeo v. Commissioner, 96 T.C. at 875. These badges focus on whether the taxpayer engaged in certain conduct that is indicative of fraudulent intent, such as: (1) failing to file income tax returns; (2) understating income; (3) failing to maintain adequate records; (4) concealing income or assets; (5) failing to cooperate with tax authorities; (6) asserting frivolous arguments and objections to the tax laws; (7) lack of credibility in testimony; (8) failing to make estimated tax payments; (9) filing false documents, including filing false income tax returns; and (10) extensive dealings in cash. See Bradford v. Commissioner, 796 F.2d at 307; Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992); Recklitis v. Commissioner, 91 T.C. 874, 910 (1988); Kotmair v. Commissioner, 86 T.C. 1253, 1260-1261 (1986); DeVries v. Commissioner, T.C. Memo. 2011-185, slip op. at 21-22. These factors are nonexclusive, as the facts of a case taken as a whole must

**[*50]** inform a finding of fraudulent intent. See Niedringhaus v. Commissioner, 99 T.C. at 211. Moreover, the existence of any one factor is not dispositive, but the existence of several factors is persuasive circumstantial evidence of fraud. See id.; Petzoldt v. Commissioner, 92 T.C. at 700.

### 1.     Understating Income

The mere failure to report income is not sufficient to establish fraud. Merritt v. Commissioner, 301 F.2d 484, 487 (5th Cir. 1962), aff'g T.C. Memo. 1959-172. However, a pattern of substantially underreporting income for several years is strong evidence of fraud, particularly if the reason for the understatements is not because of innocent mistake or is not otherwise satisfactorily explained. See Holland, 348 U.S. at 137-139; Spies, 317 U.S. at 499; Webb v. Commissioner, 394 F.2d at 378-379; see also Green v. Commissioner, T.C. Memo. 2010-109, slip op. at 22-25 (finding that a satisfactory explanation may weigh against a finding of fraud). The U.S. Court of Appeals for the Eleventh Circuit has stated that "a '[c]onsistent and substantial understatement of income is by itself strong evidence of fraud.'" Korecky v. Commissioner, 781 F.2d 1566, 1568 (11th Cir. 1986) (quoting Merritt v. Commissioner, 301 F.2d at 487), aff'g T.C. Memo. 1985-63.

In Korecky v. Commissioner, 781 F.2d at 1568-1569, the U.S. Court of Appeals for the Eleventh Circuit upheld a Tax Court decision sustaining the

[*51] Commissioner's fraud determination in part because the taxpayer understated his income by approximately $147,000 over three years. Petitioner failed to file Federal income tax returns for taxable years 2005-07 and filed a zero return for taxable year 2004. He therefore failed to report gross income of $800,152,[29] $1,185,194, $1,025,626, and $828,745.91 for the years at issue, respectively. These amounts of unreported income are substantial. Petitioner had a legal duty to report this income, see sec. 6012(a)(1)(A), and he has not satisfactorily explained his failure to do so. We therefore find that petitioner's repeated failures to report substantial amounts of income on required returns are persuasive evidence of fraudulent intent. See Klassie v. United States, 289 F.2d 96, 101-102 (8th Cir. 1961); Petzoldt v. Commissioner, 92 T.C. at 701.

### 2. Failing To Maintain Adequate Records

The failure to maintain adequate records supports a finding of fraud. See Truesdell v. Commissioner, 89 T.C. 1280, 1302-1303 (1987); see also Grosshandler v. Commissioner, 75 T.C. 1, 20 (1980). Although we consider the taxpayer's level of expertise, a taxpayer is not excused from keeping accurate records when the taxpayer has experience owning and operating a business.

---

[29]Though petitioner conceded that his gross receipts for 2004 equaled his gross receipts for 2005, respondent does not take the position that petitioner had gross receipts in excess of $800,152 for 2004.

**[\*52]** <u>Korecky v. Commissioner</u>, 781 F.2d at 1569; <u>Webb v. Commissioner</u>, 394 F.2d at 379-380.

Petitioner acknowledges that he did not maintain any books or records for his business during the years at issue. He asserts that his failure to maintain books and records as required under the Code, <u>see</u> sec. 6001, is not evidence of fraudulent intent but simply shows that he is a "poor record-keeper" and does not "like paperwork."

Although petitioner does not have formal expertise in bookkeeping or financial matters, he has been in business for himself since 1980 and has the acumen to manage the financial aspects of his sole proprietorship, including applying for loans, receiving and depositing business receipts, and recreating and summarizing in spreadsheets his deposits and expenses. His distaste for recordkeeping does not excuse him from this duty. <u>See</u> <u>Webb v. Commissioner</u>, 394 F.2d at 379-380 (upholding the Tax Court's finding of fraud against a successful businessman of "average intelligence and average business understanding" partly on the basis of incomplete records); <u>Bollella v. Commissioner</u>, T.C. Memo. 1965-162, 24 T.C.M. (CCH) 858, 864 (1965) (same), <u>aff'd</u>, 374 F.2d 96 (6th Cir. 1967). Even if we were to disregard petitioner's failure to perform bookkeeping functions for his business, he testified that he

[*53] destroyed all the receipts related to his business expenses during the years at issue upon the advice of one of the tax-avoidance organizations. Petitioner is intelligent enough to understand the import of destroying records, and this affirmative act is indicative of a fraudulent intent.

### 3. Failing To File Tax Returns

While the mere failure to file a return, standing alone, is not sufficient to support a finding of fraud, Kotmair v. Commissioner, 86 T.C. at 1261, an extended pattern of failing to file returns is a badge of fraud and may be persuasive circumstantial evidence of the intent to evade tax, see Bradford v. Commissioner, 796 F.2d at 307; Marsellus v. Commissioner, 544 F.2d at 885-886; Petzoldt v. Commissioner, 92 T.C. at 701. For purposes of section 6651(f), a zero return is not a valid return. See supra pp. 45-46.

Petitioner failed to file returns for taxable years 1999-2010. Petitioner also failed to file Forms 1099-MISC for taxable year 2007 with respect to payments that he made to contract laborers. While we commend petitioner for his efforts to reconstruct his income and expenses for the years at issue and later years, later repentant behavior does not absolve a taxpayer of his antecedent fraud. See Badaracco v. Commissioner, 464 U.S. 386, 394 (1984); Plunkett v. Commissioner, 465 F.2d 299, 303 (7th Cir. 1972), aff'g T.C. Memo. 1970-274; Niedringhaus v.

[*54] <u>Commissioner</u>, 99 T.C. at 213; <u>George M. Still, Inc. v. Commissioner</u>, 19 T.C. 1072, 1076-1077 (1953), <u>aff'd</u>, 218 F.2d 639 (2d Cir. 1955). Therefore, especially in the light of the fact that petitioner had filed Federal tax returns for taxable years 1988-89 and, in some years, Forms 1099-MISC with respect to some of his workers, his extensive pattern of nonfiling bears heavily against him and constitutes persuasive circumstantial evidence of fraud. See <u>Hi-Q Pers., Inc. v. Commissioner</u>, 132 T.C. 279, 283, 299 (2009) (finding fraudulent intent where an employer paid employees in cash and failed to file Forms W-2, Wage and Tax Statement, or Forms 1099-MISC); <u>Niedringhaus v. Commissioner</u>, 99 T.C. at 211; <u>Miller v. Commissioner</u>, 94 T.C. 316, 335 (1990) (viewing the taxpayer's nonfiling in the light of Federal income tax filing for previous years to support a finding of fraud).

### 4. Filing False Documents

Fraudulent intent may be inferred when a taxpayer files a tax return intending to conceal, mislead, or prevent the collection of tax. See <u>Spies</u>, 317 U.S. at 499. Filing false documents with the IRS constitutes "an 'affirmative act' of misrepresentation sufficient to justify the fraud penalty." <u>Zell v. Commissioner</u>, 763 F.2d at 1146; <u>see also</u> <u>Ernle v. Commissioner</u>, T.C. Memo. 2010-237, slip op. at 9. Filing false documents includes filing false income tax returns. <u>Potter v.</u>

[*55] Commissioner, T.C. Memo. 2014-18, at *13; Morse v. Commissioner, T.C. Memo. 2003-332, slip op. at 11, aff'd, 419 F.3d 829 (8th Cir. 2005).

For taxable year 2004 petitioner filed a Form 1040 that reported his gross income and tax to be zero for the year, though he now concedes that for 2004 he had approximately the same amount of gross receipts as for 2005. We infer from this conduct that petitioner intended to conceal, mislead, or prevent the collection of tax by filing a false document with the IRS. See Nix v. Commissioner, T.C. Memo. 2012-304, at *10-*11 (filing a zero return is circumstantial evidence of fraud), aff'd per curiam, 553 Fed. Appx. 960 (11th Cir. 2014); Hatling v. Commissioner, T.C. Memo. 2012-293, at *11-*14 (claiming false deductions on Schedule C is evidence of fraudulent intent); Ernle v. Commissioner, slip op. at 9 (filing false Forms 1040 with false documents attached shows fraudulent intent). Accordingly, this factor weighs against petitioner for taxable year 2004.

5. Failing To Cooperate With Tax Authorities

Failure to cooperate with revenue agents during an audit is a badge of fraud. See Lord v. Commissioner, 525 F.2d 741, 747-748 (9th Cir. 1975), aff'g in part, rev'g in part 60 T.C. 199 (1973); Baumgardner v. Commissioner, 251 F.2d at 323; Grosshandler v. Commissioner, 75 T.C. at 20. This failure is persuasive evidence of a taxpayer's guilty knowledge. See Prof'l Servs. v. Commissioner, 79 T.C. 888,

**[\*56]** 932-933 (1982).  A taxpayer's failure to cooperate with the Commissioner and the Court during the pretrial and trial proceedings also supports a finding of fraud.  See Smith v. Commissioner, 91 T.C. 1049, 1052, 1059-1060 (1988), aff'd, 926 F.2d 1470 (6th Cir. 1991); Rice v. Commissioner, T.C. Memo. 2003-208, slip op. at 15-16.

Although petitioner began cooperating with respondent shortly before trial, at the examination and most of the pretrial stages in this case his interactions with respondent were argumentative and designed to impede the collection of tax. Petitioner did not provide respondent with books and records during the examination (as he had destroyed them), and he sent Revenue Agent Pritchard numerous letters filled with wording that he borrowed from tax-avoidance organizations.  He attached Forms 12153 to many of these letters even though Revenue Agent Pritchard had told him that they were not relevant to his case. When Revenue Agent Pritchard provided him with citations of the Code and IRS guidance regarding the authority to impose and collect income tax, petitioner responded with a letter threatening legal action against her and the United States.

The petition contained tax-avoidance rhetoric and groundless claims, such as the assertion that the income reflected on Forms 1099-MISC was attributable to "illegal immigrants" who stole his Social Security number.  Petitioner did not

[*57] cooperate with respondent before trial in drafting stipulations, many of which were admitted under Rule 91(f).[30] Moreover, petitioner tried to prevent respondent from obtaining and using his bank records by filing a petition to quash summons in the U.S. District Court and a motion in limine in this Court, both of which were denied. See Curtis v. Commissioner, T.C. Memo. 2013-12, at *15-*16 (holding that the taxpayer's refusal to cooperate such that the Commissioner had to summon banks and title companies to obtain information was a badge of fraud) appeal filed (9th Cir. Aug. 7, 2013); Lain v. Commissioner, T.C. Memo. 2012-99, slip op. at 14 (holding that taxpayer's meritless petition to quash summons in a similar situation was indicative of fraud).

We commend petitioner for adjusting his behavior during the pendency of this case and for his considerable work in reconstructing largely accurate and very helpful summaries of his business income and expenses for the years at issue. However, we cannot discount months of uncooperative behavior that gives insight into petitioner's intent in not filing Federal tax returns. See Badaracco v.

---

[30]The first three proposed stipulations in respondent's proposed stipulation of facts and respondent's proposed first supplemental stipulation of facts were admitted under Rule 91(f). After trial petitioner cooperated with respondent in drafting a second supplemental stipulation of facts.

[*58] Commissioner, 464 U.S. at 394.  Petitioner's failure to cooperate with respondent is persuasive circumstantial evidence of fraud.

### 6. Asserting Frivolous Arguments

Frivolous, irrelevant, and meritless arguments, coupled with affirmative acts designed to evade Federal income tax, support a finding of fraud.  See Kotmair v. Commissioner, 86 T.C. at 1259-1261; Worsham v. Commissioner, T.C. Memo. 2012-219, slip op. at 19, aff'd per curiam, 531 Fed. Appx. 310 (4th Cir. 2013).  As discussed above, petitioner maintained frivolous positions for many years until just before trial, even after respondent provided him with relevant citations relating to the validity of the Federal income tax.  Petitioner associated with, and relied heavily upon, known tax-avoidance organizations and individuals in asserting his position.  Therefore, this factor weighs heavily against petitioner.

### 7. Concealing Assets or Income

An intent to evade tax may be inferred from "concealment of assets or covering up sources of income".  Spies, 317 U.S. at 499; Ruark v. Commissioner, 449 F.2d 311, 312-313 (9th Cir. 1971), aff'g T.C. Memo. 1969-48.  We have held in other cases that attempting to circumvent the Commissioner's efforts to obtain records when he has issued a subpoena duces tecum or a summons evinces a

[*59] fraudulent intent.  See <u>Worsham v. Commissioner</u>, slip op. at 19-20; <u>Tonitis v. Commissioner</u>, T.C. Memo. 2004-60, slip op. at 4, 7.

When he learned that respondent had served PNC Bank with a subpoena duces tecum with respect to his bank records, petitioner filed a petition to quash summons in the U.S. District Court for the Middle District of Florida.  After the petition to quash summons was dismissed for lack of jurisdiction and respondent obtained the records, petitioner filed a motion in limine in this Court to exclude the bank records as evidence.  We conclude that petitioner's motivation in filing these documents was not a good-faith attempt at addressing his Federal tax liabilities but rather was designed to prevent respondent from discovering and presenting to the Court the actual amounts of income that he had received during the years at issue.  See <u>Worsham v. Commissioner</u>, T.C. Memo. 2012-219. Petitioner's destruction of his business records also supports this conclusion.  We conclude that petitioner's attempt to conceal his income is a badge of fraud.

### 8. Failure To Make Estimated Tax Payments

Failure to make estimated tax payments is a badge of fraud.  <u>Niedringhaus v. Commissioner</u>, 99 T.C. at 211, 213.  Petitioner made no estimated tax payments for the years at issue.  This factor weighs against him.  See <u>Bradford v. Commissioner</u>, 796 F.2d at 307-308.

[*60] C.     The Cheek Defense

Even if badges of fraud are present, a taxpayer may have a good-faith misunderstanding of the law (Cheek defense) that negates fraudulent intent.  See Cheek v. United States, 498 U.S. 192 (1991); Niedringhaus v. Commissioner, 99 T.C. 202; DiMercurio v. Commissioner, T.C. Memo. 2009-225, slip op. at 8-10. Whether a misunderstanding for this purpose is in good faith is determined using a subjective inquiry into the taxpayer's state of mind.  The misunderstanding need not be objectively reasonable, though reasonableness may be relevant for purposes of assessing the credibility of the claim.  Cheek, 498 U.S. at 202-203; Niedringhaus v. Commissioner, 99 T.C. at 216-217.  The relevant inquiry is whether the taxpayer was aware of his duty to file Federal income tax returns, "'which cannot be true if the * * * [fact finder] credits a good-faith misunderstanding and belief submission, whether or not the claimed belief or misunderstanding is objectively reasonable.'"  Niedringhaus v. Commissioner, 99 T.C. at 216-217 (quoting Cheek, 498 U.S. at 202).

In evaluating a taxpayer's claim under Cheek, we must examine the facts and circumstances that form the basis of the taxpayer's claimed misunderstanding with respect to the obligation to file a Federal income tax return.  See Cheek, 498 U.S. at 205-206; Pennybaker v. Commissioner, T.C. Memo. 1994-303, 67 T.C.M.

[*61] (CCH) 3157, 3157-6 (1994). That is because there is a difference between a good-faith misunderstanding of the law, a good-faith disagreement with the law, and a good-faith belief that the law is invalid or unconstitutional. See United States v. Burton, 737 F.2d 439, 442-443 (5th Cir. 1984); Niedringhaus v. Commissioner, 99 T.C. at 217. Only a good-faith misunderstanding of the law, where a taxpayer misconstrues the tax laws and honestly but incorrectly believes that a particular law is not applicable to his situation, may negate fraudulent intent. See Niedringhaus v. Commissioner, 99 T.C. at 218 (citing United States v. Willie, 941 F.2d 1384, 1392 (10th Cir. 1991), and Cheek, 498 U.S. at 205). Conversely, a good-faith disagreement with the law shows that the taxpayer was "fully aware of his legal obligations and simply * * * [disagrees] with his known legal duty". Id. This type of disagreement does not negate fraudulent intent. Similarly, a taxpayer who contends that the law is unconstitutional cannot rely on Cheek as a defense to the fraudulent failure to file addition to tax. See Cheek, 498 U.S. at 205-206; Niedringhaus v. Commissioner, 99 T.C. at 217-218; Curtis v. Commissioner, slip op. at 14-15 (applying Cheek to the taxpayer's liability for additions to tax under section 6651(f)). We therefore disregard a taxpayer's belief that the income tax laws are for some reason invalid, but we "weigh the sincerity of beliefs based on

[*62] theories that the income tax laws do not apply in the circumstances of the particular case." Pennybaker v. Commissioner, 67 T.C.M. (CCH) at 3157-6.

Petitioner contends that he failed to file Federal income tax returns for the years at issue because he fundamentally disagreed with paying income tax and believed the Federal income tax laws to be illegal, illegitimate, and unconstitutional. He testified that the members of the organizations in which he was involved believed taxes are "not legal" and stated that "[the income tax] wasn't legal, and there was no documentation that said it was legal, I wasn't going to pay them." He also stated that his "true belief is that I don't believe we're supposed to pay taxes". Moreover, when petitioner worked for the general contracting company Independence Homes, he told the CEO of that company that Federal income taxes were unconstitutional and illegal and that he did not pay them. Petitioner also testified that he became involved in tax-avoidance organizations because he was told that someone had not "paid taxes in two years, and * * * beat the IRS at it", suggesting that he was aware of his filing obligations but thought that he could evade detection in not following the law.

Petitioner at times used rhetoric to suggest that he believed that Federal income tax laws did not apply to his particular situation. For example, in his reply to respondent's answer, he stated: "Taxpayer relied on erroneous advice from a

[*63] website that inferred independent contractors are not liable to report their earnings." Further, in filing the "Official Declaration of Domicile" with the Clerk of the Circuit Court, Volusia County, Florida, declaring himself to be a "Florida [S]tate Citizen" and a "Sovereign" rather than a U.S. citizen, petitioner purportedly thought that he could exempt himself from all laws.[31] In weighing the sincerity of these beliefs, we note that petitioner researched the Federal income tax on the Internet and read caselaw before formulating his conclusions. Instead of undertaking unbiased research, petitioner seems to have deliberately sought out people and organizations that espoused the ideas that he wanted to be true. Although petitioner is not experienced in legal matters, we believe that if he had conducted his research in good faith, he would have understood that there is no support in the law for his views. See United States v. Burdett, 962 F.2d 228 (2d Cir. 1992) (explaining that the taxpayer's purported views of the income tax had been rejected so often that someone who had conducted research could not sincerely believe that those views were correct); Lopez v. Commissioner, T.C. Memo. 2001-211, slip op. at 13-14 (applying the reasoning in Burdett to find fraud when a taxpayer claimed to rely on a book written by Irwin Schiff, a well-known

---

[31] At trial petitioner could not remember the exact purpose of the filing but testified that it was meant to give him "freedom from everything", including from the laws of the Federal Government.

[*64] tax-avoidance advocate). Moreover, petitioner maintained his frivolous assertions long after Revenue Agent Pritchard sent him a letter with Code citations, references to IRS guidance, and a warning about how those who advocate tax avoidance do not interpret the laws correctly. See Coulter v. Commissioner, T.C. Memo. 1992-224, 63 T.C.M. (CCH) 2773, 2776 (1992) (discrediting the taxpayer's claim that he had a good-faith misunderstanding of the law when he continued to assert his views after the IRS had sent him a letter informing him that the Federal income tax was constitutional).

After reviewing all of the facts and circumstances, we conclude that petitioner may not rely on Cheek as a defense to fraudulent intent. Petitioner repeatedly expressed his belief that the Federal income tax is illegal or illegitimate. Any misunderstanding of the law as applied to his particular circumstances was not sincere or in good faith; it was what petitioner wanted to believe. And while petitioner's recent change of heart is praiseworthy, it cannot excuse his past behavior. See Badaracco v. Commissioner, 464 U.S. at 394.

D.    Conclusion

Respondent has proven by clear and convincing evidence that petitioner had an obligation to file Federal income tax returns and that his failure to file was fraudulent. Accordingly, we find that petitioner's affirmative acts are evidence of

**[\*65]** fraud and hold that he is liable for additions to tax under section 6651(f) for the taxable years at issue. Because we find that petitioner is liable for additions to tax under section 6651(f), we do not address respondent's alternative contention that petitioner is liable for additions to tax under subsection (a)(1).

## V.    Additions to Tax Under Section 6651(a)(2)

Respondent determined that petitioner is liable for additions to tax under section 6651(a)(2) for failure to timely pay his taxes for the years at issue. Section 6651(a)(2) provides for an addition to tax of 0.5% per month up to 25% for failure to pay the amount shown on a return on or before the payment due date unless it is shown that the failure is due to reasonable cause and not due to willful neglect. Willful neglect means a "conscious, intentional failure or reckless indifference." United States v. Boyle, 469 U.S. 241, 245 (1985); see Russell v. Commissioner, T.C. Memo. 2011-81, slip op. at 21-22 (applying the standard in Boyle to section 6651(a)(2)). The section 6651(a)(2) addition to tax applies even if the taxpayer did not file a return as long as the Secretary prepared a valid substitute for return. Sec. 6651(a)(2), (g)(2); Cabirac v. Commissioner, 120 T.C. at 170. A valid substitute for return is one that purports to be a return, has been subscribed, and contains information sufficient to calculate the tax liability. See sec. 6020(b)(2);

[*66] Cabirac v. Commissioner, 120 T.C. at 170; Spurlock v. Commissioner, T.C. Memo. 2003-124, slip op. at 27.

The Commissioner bears the burden of production and must introduce evidence showing that a return was filed for the years at issue. Wheeler v. Commissioner, 127 T.C. 200, 206-207, 210 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008); see sec. 7491(c). Once the Commissioner meets his burden, the burden of proof is with the taxpayer to show that the additions to tax that the Commissioner determined in the notice of deficiency should not be imposed. See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Respondent bears the burden of proof as to the increased portions of the additions to tax that he asserted in his pleadings. See Rule 142(a); Rader v. Commissioner, 143 T.C. ___, ___ (slip op. at 22) (Oct. 29, 2014). Petitioner's burden of proof requires that he prove that his failure to timely pay his Federal income tax was due to reasonable cause and was not due to willful neglect. See sec. 6651(a)(2). Respondent's burden of proof requires that he prove the contrary; i.e., that petitioner's failure to timely pay was not due to reasonable cause or was due to willful neglect. See id.; Cobaugh v. Commissioner, T.C. Memo. 2008-199, slip op. at 7 n.6; see Arnold v. Commissioner, T.C. Memo. 2003-259, slip op. at 10-11 (discussing the

[*67] Commissioner's burden of proof with respect to a section 6651(a)(1) addition to tax raised in the pleadings).

Petitioner did not file valid returns for the years at issue. For purposes of section 6651(a)(2), a zero or frivolous return is not a valid return. See Oman v. Commissioner, T.C. Memo. 2010-276, slip op. at 25-31. The substitutes for returns that respondent prepared for petitioner's taxable years at issue were admitted into evidence under Rule 91(f). They purport to be "section 6020(b) returns", contain the information necessary to calculate petitioner's liabilities, and are subscribed. Respondent has therefore met his burden of production. Petitioner did not assert or present evidence showing that his failure to pay the tax shown on the substitutes for returns was due to reasonable cause and not willful neglect. Respondent has proven that petitioner's failure to pay was not due to reasonable cause but rather was the result of petitioner's willful and defiant actions. Accordingly, we sustain respondent's determinations for the years at issue with respect to additions to tax under section 6651(a)(2), adjusted to reflect our holdings supra relating to petitioner's allowable deductions.

VI.    Additions to Tax Under Section 6654

Respondent also determined that petitioner is liable for additions to tax for failure to pay estimated tax under section 6654. Section 6654 imposes a

**[\*68]** mandatory addition to tax (unless an exception applies) on an individual who underpays his estimated tax. A taxpayer has an obligation to pay estimated tax only if he has a "required annual payment". Wheeler v. Commissioner, 127 T.C. at 212; see Mendes v. Commissioner, 121 T.C. 308, 324 (2003). The addition to tax is calculated with reference to four required installment payments of the taxpayer's estimated tax liability. Sec. 6654(c)(1). Each required installment of estimated tax is equal to 25% of the required annual payment. Sec. 6654(d)(1)(A). The required annual payment is equal to the lesser of (1) 90% of the tax shown on the individual's return for that year (or, if no return is filed, 90% of his tax for such year), or (2) if the individual filed a return for the immediately preceding taxable year, 100% of the tax shown on that return. Sec. 6654(d)(1)(B) and (C). The Commissioner bears the burden of production, while the taxpayer bears the burden of proving that the Commissioner's determinations with respect to the additions to tax are invalid. Sec. 7491(c); Higbee v. Commissioner, 116 T.C. at 446-447. However, the Commissioner bears the burden of proof with respect to increases in the additions to tax. Rule 142(a); Rader v. Commissioner, 143 T.C. at ___ (slip op. at 22, 24-25).

Respondent has met his burden of producing evidence that shows petitioner had an annual payment for each of the years at issue. Respondent introduced

[*69] evidence that petitioner did not file returns for the years at issue, had tax liabilities for the years at issue, and did not make estimated tax payments for those years. Respondent also introduced, through deemed stipulations, a copy of a certified transcript showing that petitioner did not file a return for taxable year 2003. See sec. 6654(d)(1)(B) (flush language); Wheeler v. Commissioner, 127 T.C. at 210-212. Petitioner did not assert or produce any evidence showing that an exception to section 6654 applies, and respondent has proven that no exculpatory factor excuses petitioner's failure to pay estimated tax. Accordingly, petitioner is liable for the increased section 6654 addition to tax for each of the years at issue that respondent asserted in his amended answer.

VII. Conclusion

We have considered the parties' remaining arguments, and to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.